IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT VAN BUREN, for himself :
and on behalf of all others
similarly situated :

    v. : Civil Action No. DKC 19-0911

:

WALMART, INC. t/a Sam's Club
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought under the Maryland Consumer Protection Act and for Negligent Misrepresentation and Fraud is the motion to dismiss filed by Defendant Walmart, Inc. (ECF No. 31). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

I. **Background**

On July 12, 2018, Mr. Van Buren bought a Sonicare toothbrush at a Sam's Club in Annapolis, Maryland. The toothbrush was on sale: marked down from $39.98 to $31.98 as part of Sam's Club's "Instant Savings Program." Mr. Van Buren made a few other purchases that day – none of which were on sale – and his total at check out came to $51.56: $48.79 plus $2.77 in "sales tax." That sales tax was calculated based on the total *list* prices of all the items; it was not based on the amount Mr. Van Buren actually paid, because the toothbrush was purportedly being sold at a discount.

On August 31, 2018, Mr. Van Buren returned to Sam's Club and picked up some Vitamin Water Zero with the list price of $15.48, but which was again marked down to a sale price of $12.73. Again, Sam's Club calculated Mr. Van Buren's sales tax based on the list price, not the sale price. On September 10, 2018, Mr. Van Buren bought a mattress at the same Sam's Club, again on sale, and again Sam's Club calculated his sales tax based on the list price. This same pattern played out two more times, once on September 16, 2018, when Mr. Van Buren again purchased Vitamin Water from Sam's Club, and then for a final time on October 24, 2018, when Mr. Van Buren purchased some sale-discounted laundry detergent.

Under Maryland sales tax law, "sales and use tax is computed based on the 'taxable price' of a transaction subject to the tax." Md. Code Regs. 03.06.01.08. "Taxable Price" means "the total consideration for the transaction[.]" *Id.* In other words, Maryland directs vendors to pay sales tax based on the amount of money they actually receive from consumers. As another section of the Code of Maryland Regulations ("COMAR") makes clear, there is one exception to this: when an item is discounted based on a "manufacturer's coupon." Md. Code Regs. 03.06.01.37. In the case of a "manufacturer's coupon," the customer pays the vendor the list price, but is eligible for a rebate from the manufacturer. *Id.* COMAR provides a useful example:

> [I]f a customer purchases a pair of shoes priced at $110 with a retailer's coupon worth

2

> $10 off, the final sales price of the shoes is
> $100 . . . If a customer purchases a pair of
> shoes priced at $110 with a manufacturer's
> coupon worth $10 off, the consideration paid
> for the pair of shoes totals $110[.]

*Id*. Mr. Van Buren did not receive any rebate and alleges on information and belief that all of his discounted purchases were discounted under the retailer's – Sam's Club's – sale, and not under any "manufacturer's coupon."

Mr. Van Buren alleges, again on information and belief, that Sam's Club calculates the sales tax based on list prices and that this is really "a hidden addition to the sale price of the item," (ECF No. 27 ¶ 90), because the extra amounts Walmart collected "were retained by Walmart and were not remitted to the state," (*id*. ¶ 130). Mr. Van Buren suggests that this representation appears on receipts from his purchases from Sam's Club, and that the price is "represented through Walmart's register, cashier, and/or point of sale credit card machine to customers." (*Id*. ¶ 101).

Mr. Van Buren's second Vitamin Water purchase on September 16, 2018 is an example of exactly how this plays out: he notices a $15.48 pack of Vitamin Water on sale for $12.73. He approaches the register to pay for this item. During the transaction, the screen flashes a pre-tax total, $12.73, and an additional amount to be paid in sales tax: $0.93. But in fact, Sam's Club was only obligated to remit $0.76 in sales tax. Maryland's sales tax

3

currently stands at 6%; 6% of the $12.73 Mr. Van Buren actually paid for his Vitamin Water is $0.76; $0.93 is 6% of the *list* price of $15.48. In other words, Sam's Club represented to Mr. Van Buren that it was going to remit 17 more cents to the State of Maryland as sales tax than they were obligated to, when in fact Sam's Club retained those 17 cents. In the alternative, Mr. Van Buren suggests that if in fact Walmart's sales are really predicated on "manufacturer's coupons," then Walmart's conduct is still "false and misleading," (*Id.* ¶ 136), because Walmart "does not present the true price for purposes of determining the final costs of an item." (*Id.*)

Mr. Van Buren filed this case as a class action in the Circuit Court for Anne Arundel County, Maryland. (ECF No. 1). On March 27, 2019, Defendant removed the case to this court. (*Id.*). On May 13, 2019, Defendant moved to dismiss (ECF No. 16), and on June 2, 2019, Plaintiff responded by filing his First Amended Complaint ("FAC"), (ECF No. 27). Defendant again moved to dismiss on July 24, 2019 (ECF No. 31), Plaintiff responded in opposition, (ECF No. 35), and Defendant replied in further support of its motion to dismiss, (ECF No. 37).

Mr. Van Buren asserts claims of violation of the Maryland Consumer Protection Act, (the "MCPA"), Md. Code Ann., Com. Law § 13-101, negligent misrepresentation, and fraud. (ECF No. 27, at

23-28). Again, he does so as the putative named Plaintiff of a class consisting of:

> all non-exempt residents within the last three years from the filing of the initial complaint, who:
>
> a. Entered into purchase with Walmart in Maryland;
>
> b. The purchase included a representation of a sale price that did not reflect the true sale price or failed to provide the price upon which the sales tax would be calculated;
>
> c. Walmart calculated the amount due on a price greater than the sale price or failed to disclose the price upon which the sales tax would be calculated; and
>
> d. Paid more than the sale price amount or was taxed for an amount greater than the tax due on the sale price; and
>
> e. Did not receive a refund of the excess sale price or excess sales tax.

(*Id.* at 20-21).

## II. Standard of Review

The purpose of a motion to dismiss under Fed.R.Civ.P.(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*,

5

550 U.S. 544, 555 n.3 (2007). There must be more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268, (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

A fraud claim is subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." The circumstances required to be pleaded with particularity "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D. Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the

defendant against frivolous suits; to eliminate fraud actions where all the facts are learned only after discovery; and to safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784. In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.* Fraud allegations that fail to comply with Fed.R.Civ.P. 9(b) warrant dismissal under Fed.R.Civ.P. 12(b)(6) review. *See id.* at 783 n. 5.

**III. Analysis**

Defendant raises these arguments in its motion to dismiss: (1) that Plaintiff lacks standing to represent certain class members, (ECF No. 31-1, at 5-6), (2) that Plaintiff has not supported his assertion that Walmart overcharged sales tax, and (3) that Plaintiff has otherwise failed to state a claim, first because Plaintiff does not adequately allege a duty in tort, second because Plaintiff does not allege a false statement regarding calculation of sales tax, and third, because Plaintiff does not adequately allege reliance, (*id.* at 7-13).

    **A. Standing**

Defendant's first argument is that "Plaintiff has failed to establish standing to assert claims that relate to purchases made

at Walmart stores rather than Sam's Club stores," (ECF No. 31-1, at 5), and that "Plaintiff lacks standing to assert claims related to other Walmart discount programs[,]" (*id*. at 6). Defendant suggests that Plaintiff is using this class action as a "back door" to attain standing. *Id*. But Defendant does not actually attack *Plaintiff's* standing, nor does Defendant suggest that Plaintiff has not suffered the constitutionally required "injury in fact." *See Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

Defendant relies primarily on two cases from the United States District Court for the District of New Jersey, *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F.Supp.2d 529, 537 (D.N.J. 2011) and *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011). In both cases, the court accepted a similar challenge to standing, holding that the named plaintiffs in each case lacked standing to assert claims for the class writ large. Both cases stemmed from purchases of allegedly faulty products, and involved plaintiffs attempting to bring claims on behalf of a class which had not just purchased the product which had injured the named plaintiffs, but other products as well. *Green*, 279 F.R.D, at 280; *Lieberson*, 865 F.Supp.3d at 537.

Neither case is persuasive and their holdings have been called into question. Later District of New Jersey caselaw has limited *Green* and *Lieberson* to their circumstances, and indeed recognized that this is not so much a standing issue as a "class certification

8

issue[.]"  *See Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific, LLC*, 945 F.Supp.2d 543, 557 (D.N.J. 2013).  In other words, the parties in *Green*, *Lieberson*, and *Georgia-Pacific* were really attempting to litigate the appropriate bounds of a class at the motion to dismiss stage.  As the United States Supreme Court has warned, class certification "is logically antecedent to the existence of Article III [standing] issues, [thus] it is appropriate to reach them first[.]"  *Amchem Products v. Windsor*, 521 U.S. 591, 612 (1997).

The same is true here: Defendant is attempting to limit the potential size of Plaintiff's class action by conflating Article III standing with the commonality requirement of Fed.R.Civ.P. 23(a).  The proper time to challenge the inclusion of putative class members injured at different stores and under different discount programs is at the class certification stage, not now.

**B.   Failure to State a Claim**

**1.   Information and Belief Pleading**

Many of Mr. Van Buren's allegations are made "on information and belief."  In particular, Mr. Van Buren pleads "[o]n information and belief, all amounts collected from Class Members on the portion of the purchase which is paid with non-reimbursable discounts *were retained by Walmart and were not remitted to the state*."  (ECF No. 27 ¶ 120) (emphasis added).  Defendant argues that that "[t]his

9

allegation at the core of Plaintiff's suit is unsupportable." (ECF No. 37, at 4).

Under the pleading standard the Supreme Court articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely "upon information and belief" are "insufficient to defeat a motion to dismiss." *Harman v. Unisys Corp.*, 356 F.App'x 638, 640-41 (4th Cir. 2009); *see also In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir. 2014); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013); *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014). As Judge Grimm has noted, it is important to differentiate "between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action ... [and the] proper use of 'upon information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted." *Malibu Media*, 2014 WL 7188822, at *4 (citations and internal quotation marks omitted). Indeed, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" *Kajoshaj v. New York City Dept. of Educ.*, 543 F.App'x 11, 16 (2d Cir.2013) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir.2008)).

That information is "particularly within defendants' knowledge and control" is not in and of itself decisive, however. "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff *but he has sufficient data to justify interposing an allegation on the subject*." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1224 (3d ed., April 2019 update) (emphasis added).

The question, then, is whether Mr. Van Buren has included sufficient data to justify his allegation that Walmart actually retained the collected sales tax and did not remit it to the state. The answer is no. Nothing in the complaint suggests that Walmart has actually retained any money collected as sales tax. Mr. Van Buren may have plausibly pleaded that the discounts at issue were not pursuant to any manufacturer's coupon by pointing out that Walmart has elsewhere represented that it does "not accept manufacturers' or competitors' coupons." (ECF No. 27 ¶ 52 n.1). It does not follow, however that Walmart is not remitting the full amount it collects as sales tax to the state. Without any basis for this allegation, the house of cards on which Mr. Van Buren has built his affirmative misrepresentation claims collapses: if, in fact, Walmart collected sales tax and remitted that money to the state *as sales tax*, then there is no misrepresentation.

## 2. Maryland Consumer Protection Act

The MCPA forbids "any unfair, abusive, or deceptive trade practice. . . in . . . [t]he sale, lease, rental, loan, or bailment of any consumer goods[.]" Md. Code Ann., Com. Law § 13-303(1). The law is to "be construed and applied liberally to promote its purpose." Md. Code Ann. Com. Law § 13-105.

To prevail on this claim, Mr. Van Buren must show that he reasonably relied to his detriment on some promise or misrepresentation made by Walmart. See *Goss v. Bank of America, N.A.*, 917 F.Supp.2d 445, 451 (D.Md. Jan. 8, 2013), at *3 ("To state a claim under the MCPA, 'the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation'") (quoting *Lloyd v. General Motors Corp.*, 397 Md. 108, 143, 916 A.2d 257 (2007)).

Defendant attacks Plaintiff's claims collectively, and in the context of the MCPA, argues 1) that there was no affirmative misrepresentation, (ECF No. 31-1, at 9), and 2) that Plaintiff does not allege reliance, (*id*. at 12). Defendant argues that Plaintiff does not "allege a single instance in which Sam's Club made any representation *at all* as to how the sales tax would be calculated for discounted items, much less a *mis*representation." (*Id*. at 10). As Defendant would have it, Sam's Club accurately represented the total pre-sale price, accurately represented the

total post-sale price, and accurately represented the amount it would charge Plaintiff in sales tax. *Id*. Apparently "fatal" to Plaintiff's claim is the fact that "Plaintiff never alleges that Sam's Club told him how sales tax would be calculated for the five transactions at issue." *Id*.

This is a misreading of Plaintiff's claim. Plaintiff is not suggesting that the misrepresentation is that Walmart said something like: "we are going to calculate your sales tax based on the sale price," but then went on to calculate it based on the list price. Rather (taking again the second Vitamin Water purchase as a representative example) Plaintiff's understanding of the misrepresentation is that Walmart effectively said: "based on your total at checkout, we will charge you $0.93 in sales tax, which we will remit to the state," but then went on to remit only $0.76 to the state – the amount they legally owed under Maryland's sales tax – and pocketed the remaining $0.17. This is just another way of saying, as Plaintiff puts it in his complaint, "the sale price was misrepresented by the Defendant." (ECF No. 27 ¶ 158). Because Walmart, he alleges, kept the $0.17 difference, the sale price of the second Vitamin Water purchase was really $12.90, not $12.73, but through false pretenses – the faulty sales tax calculation – Walmart persuaded him to pay an additional $0.17.

Plaintiff's reliance on *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F.Supp.3d 423 (D. Md. 2014) is instructive.

13

In *Bourgeois*, the defendant charged an additional service fee on a ticket purchase at checkout. *Id*. at 457. The plaintiff suggested that this "service fee" carried with it an implied representation that it was "legitimate and collectible," and also asserted that while the charge was for "service," it was really "partially earmarked as a kickback to [a third party]." *Id*. at 457-58. Relying on *Miller v. Pac Shore Funding*, 224 F.Supp.2d 977, 988 (D.Md. 2002) *aff'd*, 92 Fed.Appx. 933 (4th Cir. 2004), the court found that a given charge need not be "legitimate" to avoid a claim based on misrepresentation.

In *Bourgeois*, the court described the plaintiff's notion of the "misrepresented kickback" as follows:

> The second sort of misrepresentation plaintiff avers concerns the allegedly undisclosed remittance of a portion of the service charges from Ticketmaster to the Lyric. For example, Bourgeois alleges that defendants represented that the $12 fee they charged Bourgeois was for "service" when in reality it was partially earmarked as a kickback to the Lyric. Compl. ¶ 71. However, in my view, Ticketmaster's labelling of the $12 fee – whether as a service charge, processing fee, convenience fee, or delivery fee – does not constitute any sort of representation about how Ticketmaster would use the $12. Like many businesses, Ticketmaster undoubtedly allocates the revenue it collects for a variety of purposes, such as paying salaries, overhead, advertising, and legal fees, to name a few. And, it apparently also pays the Lyric for the right to be the exclusive ticket seller for events at the Lyric. In this day and age, it is not surprising that, in exchange for the exclusive right to sell concert tickets at a particular venue, the ticket seller pays to

14

> the venue a portion of any service fees it collects. The fact that the $12 is labelled as a "service charge" does not make any representation about the particular ways in which the fee would be used.

*Id*. at 458. Unlike in *Bourgeois*, there is no ambiguity in "sales tax" like there is in "service charge." While a "'service charge' does not make any representation about the particular ways in which the fee would be used[,]" a "sales tax" makes a very particular representation: that the store is going to remit that amount to the state *as sales tax*.

Because, however, Plaintiff has not pleaded sufficient data to justify the allegation that Walmart actually retained any money collected as sales tax, this case is not meaningfully distinguishable from *Bourgeois*. Just like in *Bourgeois*, Plaintiff has only established that Walmart may have submitted to him an "illegitimate" charge in the form of a sales tax charge above that of what the state requires. But if Walmart actually remitted the sales tax to the state, that charge did not contain any misrepresentation: if Walmart charged Mr. Van Buren $0.93 in sales tax and remitted $0.93 in sales tax to Maryland, then there is no misrepresentation, *even if Maryland only required Walmart to remit $0.76 in sales tax*.

Mr. Van Buren's alternative claims also fail to present cognizable misrepresentations. Plaintiff argues that:

> if the sales taxes are properly calculated not on the sale price but instead on the original

> non-discounted price, then Walmart's
> representations and omissions (i) that the
> discount meets the criteria to be deducted
> from the amount subject to sales tax and (ii)
> that there is only one price involved in the
> transaction because the 'sale price' is not
> the price used to calculate sales taxes are
> false and misleading.

(ECF No. 27 ¶ 10). Plaintiff has simply failed to allege that Walmart ever represented that "the discount meets the criteria to be deducted from the amount subject to sales price" or that "there is only one price involved in the transaction[.]" Elsewhere in the complaint, Mr. Van Buren formats his alternative claim as one of omission: Walmart failed to disclose that it *does* in fact accept coupons from manufacturers and that the discounts at issue were ultimately reimbursed by the manufacturer.

As to this formulation of his claim, Mr. Van Buren has failed adequately to plead reliance. Mr. Van Buren suggests that Walmart needed to tell him that the discounts at issue were subject to a manufacturer's rebate, and therefore that sales tax would be calculated based on the pre-sale price. As he puts it, Walmart needed to "advise or disclose that (1) it was being compensated or reimbursed by the manufacturer for the 'instant discount'; (2) Walmart does accept coupons from manufacturers; and (3) Mr. Van Buren would pay sales tax on the original price." (ECF No. 27 ¶ 60); *see also* (*id.* ¶ 21) ("If the discounts were, in fact, wholly provided by the manufacturer, Walmart['s] statements did not disclose these facts and failed to inform consumers that any

16

discount was a manufacturer discount or that consumers would have to pay taxes on the pre-discounted price.")

"[A] consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505, 535 (D.Md. 2011). Mr. Van Buren has pleaded reliance in purely conclusory terms; he has nowhere suggested that he "would not have made the choice in question had the commercial entity disclosed the omitted information." In his opposition to the motion to dismiss, Mr. Van Buren cites to 15 paragraphs in the amended complaint where he "states explicitly his reasonable reliance and damages sustained as a result of that reliance." (ECF No. 35, at 22). Yet in none of these 15 paragraphs does Mr. Van Buren suggest that had the omitted information regarding the sales tax been provided to him, he would have refused to go through with the purchase, or indeed done anything at all differently. As such, Plaintiff has not adequately pleaded reliance.

### 3. Negligent Misrepresentation

In Maryland, the elements of negligent misrepresentation are: 1) the Defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; 2) the defendant intends that his statement will be acted upon by the plaintiff; 3) the

17

defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; 4) the plaintiff, justifiably, takes action in reliance on the statement; and 5) the plaintiff suffers damage proximately caused by the defendant's negligence. *See Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (internal quotations omitted).

Again, Mr. Van Buren has failed to allege an affirmative false statement because he cannot establish even a good-faith basis for speculating that Walmart retained amounts collected as sales tax. Defendant's motion to dismiss will be granted as to this count.

**4. Fraud**

Under Maryland law, the elements of common law fraud are: 1) that the defendant made a false representation to the plaintiff, 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, 3) that the misrepresentation was made for the purpose of defrauding the plaintiff, 4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *See Maryland Environmental Trust v. Gaynor*, 370 Md. 89, 97 (2002). Again, Mr. Van Buren has not sufficiently alleged an affirmative misrepresentation.

As with the MCPA claim, however, Mr. Van Buren alternatively bases his fraud claim on Walmart's omissions. Specifically, he

argues that "if the taxes are properly calculated not on the sale price but instead on the non-discounted price, then Walmart misrepresents that there is only one price involved in the transaction because the 'sale price' is not the price used to calculate sales taxes." (ECF No. 27 ¶ 182). As is the case with the MCPA, "[a] plaintiff satisfies fraudulent inducement's element of reliance, and the right to rely, on a false representation where the evidence establishes that the plaintiff would have acted differently but for the representation." *Dynacorp Ltd. V. Aramtel Ltd.*, 208 Md.App. 403, 464 (2012). Likewise, in cases of omission or non-disclosure like this one, "the non-disclosed fact must be material, which means it must be one on which a reasonable person would rely in making a decision." *Bourgeois*, 3 F.Supp.3d at 460 (citing *Sass*, 152 Md.App. at 430). Again, Mr. Van Buren has failed to plead the materiality of the omission: he does not allege that had the omitted information been included, he would have made a different decision.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Walmart, Inc. will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
